UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | | |
|---|---|---|---|
| BROOKE LEE WHITAKER, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| v. | ) | No. | 4:15-CV-10-HSM-CHS |
| | ) | | |
| TRINITY MINTER, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## <u>MEMORANDUM OPINION</u>

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by *pro se* prisoner Brooke Lee Whitaker ("Petitioner"), challenging the constitutionality of her confinement under a state court judgment of conviction of rape [Doc. 1]. Respondent filed a response in opposition, as well as a copy of the state record [Docs. 18 and 20]. For the reasons set forth below, Petitioner's § 2254 petition [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## I. PROCEDURAL HISTORY

Petitioner was indicted for aggravated rape of a fellow inmate in the Bedford County Jail. *See State v. Brooke Lee Whitaker*, No. M2009–02449–CCA–R3–CD, 2011 WL 2176511, at *1 (Tenn. Crim. App. May 31, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011). Following negotiations with the State, Petitioner pleaded guilty to one count of rape, and the trial court sentenced her to serve twelve years in confinement. *Id.* The judgment reflects that Petitioner was also sentenced to community supervision for life. *Id.* On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the judgment of the trial court and the Tennessee Supreme Court ("TSC") denied permission to appeal. *Id.* at *3.

Next, Petitioner filed for post-conviction relief, arguing that she received ineffective assistance of counsel, that her guilty plea was unknowing and involuntary, and that her trial counsel had a conflict of interest. *See Brooke Lee Whitaker v. State*, No. M2013–00919–CCA–R3–PC, 2014 WL 2553441, at *1 (Tenn. Crim. App. June 4, 2014), *perm. app. denied* (Tenn. Sept. 22, 2014). The TCCA affirmed the post-conviction court's denial of relief and on September 22, 2014, the TSC denied permission to appeal. *Id.* at *12.

Petitioner then filed a motion under Tennessee Rule of Criminal Procedure 36.1 for the correction of an illegal sentence, arguing, "her sentence is illegal because the trial court failed to advise her that she would be subject to community supervision for life." *State v. Brooke Lee Whitaker*, No. M2015–01853–CCA–R3–CD, 2016 WL 4547991, at *1 (Tenn. Crim. App. Aug. 31, 2016), *no perm. app. filed.* Petitioner argued that Tennessee Rule of Criminal Procedure 11 and *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010), rendered her sentence illegal. *Id.* The trial court dismissed Petitioner's Rule 36.1 motion, and the TCCA affirmed the dismissal, holding that *Ward* did not apply retroactively and that Petitioner's sentence was legal. *Whitaker*, 2016 WL 4547991, at *2.

On November 18, 2016, Petitioner filed a petition for a writ of habeas corpus. *Whitaker v. Minter*, No. W201700127CCAR3HC, 2017 WL 4004163, at *1 (Tenn. Crim. App. Sept. 8, 2017). Once again, Petitioner argued that her sentence was illegal pursuant to Tennessee Rule of Criminal Procedure 11 and *Ward* because the trial court did not inform her that she would be subject to community supervision for life. *Id*. The state habeas court denied her petition on November 29, 2017. *Id*. On January 3, 2017, Petitioner filed an unsigned notice of her appeal. *Id*. Because Petitioner's notice of appeal was untimely, her appeal was dismissed. *Id*.

Petitioner filed the instant petition for writ of habeas corpus on November 10, 2014 [Doc. 1]. This matter is now ripe for the Court's review.

## II.     FACTUAL HISTORY

The recitation of the facts by the Assistant District Attorney General at Petitioner's guilty plea hearing provides the following information.

> In August 2008, Defendant and five other women, including the victim, were all housed in the same cell in the Bedford County jail. After lights were shut off and the cell was locked on the night of August 20, Defendant and one other inmate in the cell approached the victim. The victim was in her own bunk bed. Defendant and the other inmate held down the victim and began sexually assaulting her. They digitally penetrated the victim's vagina and also performed cunnilingus on the victim. Defendant yelled for other women present to help hold down the victim, and two additional inmates proceeded to assist in holding down the victim while the sexual assault continued. The victim reported the sexual assault the following day.

*Whitaker*, 2011 WL 2176511, at *1.

## III.    STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994). Congress has mandated that federal courts review state court adjudications on the merits of such claims using a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Under this deferential standard, this Court is bound to accept the state court's findings of fact as true unless a petitioner presents "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1)(providing that "a determination of a factual issue by a State court shall be presumed to be correct" unless the petitioner rebuts that presumption with clear and convincing evidence); *see Seymour v. Walker*,

224 F.3d 542, 551-52 (6th Cir. 2000). Additionally, this Court may not grant habeas relief to a state prisoner unless the state court's decision on the merits of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)(defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The standards set forth in the AEDPA's are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

However, before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Wilson v. Mitchell*, 498 F.3d 491, 498–99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)). Under Tennessee Supreme Court Rule 39, a Tennessee prisoner exhausts a claim by raising it before the TCCA. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003). A federal court will not review claims that were not entertained by the state court due to the petitioner's failure to (1) raise those claims in the state courts while state remedies were available, or (2) comply with a state procedural rule that prevented the state courts from reaching the merits of the claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless the petitioner can show cause to excuse the failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.* at 750.

## IV.     ANALYSIS

Petitioner raises six claims for relief in her § 2254 habeas corpus petition [Doc. 2].

1. Petitioner's guilty plea was not knowingly, voluntarily and intelligently entered into [Doc. 2 p. 2];

2. Ineffective assistance of trial counsel for failing to properly advise Petitioner regarding material elements of the accepted plea [Doc. 2 p. 7];

3. Ineffective assistance of trial counsel for failing to investigate the facts of the case [Doc. 2 p. 9];

4. Ineffective assistance of post-conviction counsel [Doc. 2 p. 12];

5. Trial court failed to fully inform Petitioner of the consequences of her plea [Doc. 2 p. 13];

6. Petitioner's sentence is excessive and contrary to the law [Doc. 2 p. 14].

## A.    CLAIM 1

Petitioner alleges that she did not knowingly, voluntarily and intelligently enter her guilty plea [Doc. 2 p. 2]. Specifically, she contends that trial counsel informed her that "*nolo contendere*" meant "best interest," and she entered her best interest plea with the understanding that it was not an admission of guilt [*Id*.]. Moreover, Petitioner contends that she did not know the conviction would result in registry as a sex offender and require lifetime community supervision [*Id*. at 15].

The TCCA addressed this claim regarding her alleged misunderstanding of entrance of a best interest plea. On post-conviction appeal, the TCCA applied the legal standard under *Alford* and *Boykin* and found as follows:

> A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In evaluating whether a guilty plea was knowingly and voluntarily entered, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A reviewing court must make this determination "based upon the totality of the circumstances." *State v. Turner,* 919 S.W.2d 346, 353 (Tenn. Crim. App. 1996). A court charged with determining the nature of a guilty plea:

>> must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the

court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

*Whitaker*, 2014 WL 2553441, at *10. Based on the following evidence, the TCCA determined that Petitioner entered her plea knowingly and intelligently. *Id.*

The trial court engaged in a lengthy colloquy with the petitioner in regards to her right to proceed to trial, the potential punishment she faced if she proceeded to trial, and the nature of a best interest plea. The trial court informed her that a best interest plea did not require the petitioner to admit guilt but carried the same effect as a guilty plea, and the petitioner stated that she understood the consequences of a best interest plea. The petitioner agreed that she understood the charges against her and that trial counsel had fully explained the plea agreement to her before she signed it. She affirmed that she wished the trial court to accept her plea of guilty as a best interest plea. The petitioner stated that her plea to the amended charge of rape was "[b]est interest." The trial court then clarified, "[P]lea of guilty; is that correct? Not trying to put words in your mouth. I understand it is a best interest plea. It is still a guilty plea. Is that what you want to do?" The petitioner then stated that she did wish to enter that plea and that it was her free and voluntary decision to do so.

The post-conviction court noted that, based on the tone of testimony of the petitioner, she did not seem to be someone "that could be easily intimidated or coerced into pleading guilty if [she] didn't want to." The court further found that while the petitioner may not have been "happy" to plead guilty, it appeared that her decision to do so was voluntary. We agree that the plea was knowingly and voluntarily entered. The petitioner had a lengthy discussion with the trial court about the nature of a best interest plea, and was able to hear the trial judge have the same discussion with her co-defendant, before she entered her plea.

*Id.* at *10-11.

Respondent argues the state court's conclusion in this regard was neither contrary to nor an unreasonable application of clearly established federal law and was not based on an unreasonable determination of fact [Doc. 18 p. 13].

A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn her plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the

guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27. In the instant case, at the plea hearing, Petitioner stated that she read and understood her petition to enter a plea of guilty and that she understood that entering a best interest plea had the same effect as a guilty plea. *Whitaker*, 2014 WL 2553441, at *1. Petitioner stated that her plea to the amended charge of rape was "best interest." *Id.* Trial court then clarified, "[P]lea of guilty; is that correct? Not trying to put words in your mouth. I understand it is a best interest plea. It is still a guilty plea. Is that what you want to do?" *Id.* Petitioner responded that it was, and she agreed that she made this decision freely and voluntarily and that she was neither promised anything other than the agreement announced in open court nor was she threatened in any way. *Id.* It was only after finding that Petitioner entered her plea freely, voluntarily, and understandingly, that the trial court accepted the best interest plea. *Id.*

Moreover, at the post-conviction hearing, trial counsel testified that Petitioner made the decision to plead guilty and that he had informed her of what he believed to be the nature of the case against her, the applicable law, and the advantages and disadvantages of going to trial as opposed to taking a plea deal. *Id.* at 6. On cross-examination, trial counsel testified that he believed that Petitioner was "extremely bright" and likely could "have been anything she wanted to." *Id.* Trial counsel stated that Petitioner had maintained her innocence throughout the proceeding but that the realization that two of her co-defendants were going to testify for the State and the nature of that testimony likely made her realize that a best interest plea was the most successful course of action. *Id.* He informed Petitioner that by taking the best interest plea she would leave the determination of her sentence entirely with the trial judge and that the judge would

likely impose a sentence closer to the high end of the sentencing range. *Id.* After these thorough discussions with trial counsel, Petitioner chose to enter the plea.

As outlined in the record, Petitioner's claim that she entered her plea with the understanding that she was not admitting any guilt is clearly contradictive of her statements made in open court and trial counsel's testimony at the post-conviction hearing. Consequently, this Court finds that Petitioner failed to show that the TCCA decision is in any way an unreasonable application of *Boykin* or other Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on this claim.

Additionally, Petitioner claims that she "could not have knowingly, voluntarily and intelligently entered into her plea agreement due to [her] not being informed that a consequence of pleading guilty to a rape charge would result in requiring her to register as a sex offender and be under lifetime supervision" [Doc. 2 p. 4]. Petitioner states that she did not become aware of this punishment until after she filed her petition for post-conviction relief [*Id.*]. If she had known about this requirement, Petitioner says she would not have accepted the plea offered by the State [*Id.*]. Petitioner argues that because she was not advised of all the consequences she faced, "her ability to make an intelligent decision regarding [the] plea was severely undermined" [*Id.* at 5].

Respondent argues that this claim is procedurally defaulted because Petitioner never raised this claim in the Tennessee state courts in any proceeding challenging her criminal judgment [Doc. 18 p. 15].

After a review of the record, this Court finds that this claim was not properly raised in state court, and thus the claim is unexhausted and not reviewable by the Court under § 2254. Further, Petitioner is now precluded from raising this claim in a state post-conviction proceeding as the time for seeking such relief long since has passed. T.C.A. § 40-30-102(a) and (b); *Seals v. State*,

23 S.W.3d 272, 276 (Tenn. 2000).  At this point in her pleading, Petitioner fails to argue any cause[1]

that would excuse her procedural default of this claim.  Accordingly, Petitioner is not entitled to

relief on this ground.

## B.    CLAIM 2, 3, and 4

Petitioner also claims that she received ineffective counsel from trial counsel (Claim 2 and

3), and post-conviction counsel (Claim 4).  The Sixth Amendment provides, in pertinent part, that

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

Counsel for his defense."  U.S. Const. Amend. VI.  Under the Sixth Amendment, a defendant has

a constitutional right not just to counsel, but to "reasonably effective assistance" of counsel.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the *Strickland* standard for proving

ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's

performance was deficient; and (2) that the deficient performance prejudiced the defense.  *Id.*

Under the first prong of the test, the appropriate measure of attorney performance is

"reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  A defendant

asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are

alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The

reasonableness of counsel's performance must be evaluated "from counsel's perspective at the

time of the alleged error and in light of all the circumstances, and the standard of review is highly

deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at

689).  A court considering counsel's performance "must indulge a strong presumption that

---

[1] Later in her pleading, Petitioner argues ineffective assistance of post-conviction counsel
for failing to raise an ineffective assistance of trial counsel claim for trial counsel's alleged failure
to advise Petitioner of the sex offender registry and lifetime supervision requirements stemming
from her conviction.  This claim is addressed under this Court's analysis of Claim 2 in this
Memorandum and Order.

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Any § 2254(d)(1) claim reviewed under *Strickland* is "doubly deferential", affording both the state court and the defense attorney the benefit of the doubt. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

> **1.  Claim 2: Trial Counsel was Ineffective for Failing to Advise that the Conviction Would Result in Registry as a Sex Offender and Require Lifetime Community Supervision**

Petitioner contends that trial counsel was ineffective for failing to advise her "regarding material elements of the accepted plea" [Doc. 2 p. 7]. Specifically, Petitioner claims that she was

unaware that her guilty plea would result in mandatory community supervision for life status [*Id*. at 8]. Petitioner argues that trial counsel's failure to inform her of this additional sentence prior to pleading guilty violated her due process rights under the Fourteenth Amendment [Doc. 2 p. 8].

Respondent argues that this claim is procedurally defaulted because it was never raised in the Tennessee state courts in any proceeding challenging Petitioner's criminal judgment, and the TCCA did not consider it *sua sponte* [Doc. 18 p. 18]. Respondent correctly cites to Tennessee procedural rules, stating that the post-conviction statute of limitations under Tenn. Code. Ann. § 40-30-102(a), "one petition" limitation of § 40-30-102(c), and waiver provision of § 40-30-106(g) now prevent Petitioner from asserting this claim [*Id*. at 19]. *See* Tenn. Code. Ann. § 40-30-102(a) (providing that a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date on which the judgment became final); *id*. at § 102(c) (providing that in no event may more than one (1) petition for post-conviction relief be filed attaching a single judgment); *id* at § 106(g) (providing that a ground for relief is waived if the petitioner failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented).

After review of the record, this Court finds that Petitioner did not raise this issue in her appeal to TCCA. Therefore, the claim is procedurally defaulted, and this Court may not reach the merits unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). Although Petitioner does not specifically argue any cause to excuse her procedural default of this claim, Respondent addressed a potential *Martinez* claim in its response. Respondent asserts that the post-conviction counsel did not raise

this claim for adjudication before the post-conviction trial court, which was the initial-review collateral proceeding, and thus, Petitioner *may* assert ineffective assistance of post-conviction counsel as cause to excuse procedural default of this claim [Doc. 18 p. 19]. Ineffective assistance of state post-conviction counsel can establish cause to excuse a Tennessee prisoner's procedural default of a substantial federal habeas claim that her trial counsel was constitutionally ineffective. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014). However, Respondent argues that even if Petitioner presented this argument, it would be unsuccessful [*Id.*].

The Supreme Court's decision in *Martinez v. Ryan*, ——U.S. ——, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) effected a change in decisional law in that it created a "narrow exception" to the general rule of *Coleman v. Thompson*, 501 U.S. 722 (1991). The general rule from *Coleman* states that a habeas petitioner cannot use ineffective assistance of collateral review counsel as cause to excuse a procedural default. *Coleman*, 501 U.S. at 756–57. The *Martinez* exception, however, provides that where a state's procedural law requires claims of ineffective assistance of counsel to be raised in an initial-review collateral proceeding, a procedural default will not bar a habeas court from hearing a substantial claim of ineffective assistance of counsel, if in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Martinez*, 566 U.S. at 17. A year later, the Supreme Court expanded the *Martinez* exception to cases where a "state['s] procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal . . . ." *Trevino v. Thaler*, 569 U.S. 413, 428 (2013). The Sixth Circuit subsequently ruled this exception applicable to Tennessee. *See Sutton*, 745 F.3d at 795–96.

To successfully establish cause and prejudice under *Martinez* and *Trevino*, a petitioner must show a substantial underlying claim of ineffective assistance of trial counsel, that is, that the underlying ineffective assistance of counsel claim has some merit. *See Trevino*, 133 S.Ct. at 1918; *Martinez*, 132 S. Ct. 1318–19; *Cook v. Ryan*, 688 F.3d 598, 610 (9th Cir. 2012) (*Martinez* requires that a petitioner's claim be rooted in "'a potentially legitimate claim of ineffective assistance of trial counsel.'"). Based on this ineffective assistance of post-conviction counsel claim, this Court is required to review but not determine whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to determine only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them. *See Gunter v. Steward*, No. 2:13–CV–00010, 2014 WL 2645452, at *13 (M.D. Tenn. June 13, 2014) ("[I]n many habeas cases seeking to overcome procedural default under *Martinez,* it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*.").

Petitioner alleges that she did not become aware of the lifetime supervision mandate until after she had filed her petition for post-conviction relief [Doc. 2 p. 8]. Petitioner states, "had she known about these additional consequences (1) she would not have accepted the 'best interest plea' offered by the State and (2) she would have brought up this issue in her petition for post-conviction relief." [*Id.*]. Respondent argues that Petitioner, by her own admission, was in fact aware of this requirement of the plea [Doc. 18 p, 20]. Respondent references Petitioner's pleading where Petitioner notes that the judgment sheet entered in her case contained a checked box that stated "Pursuant to 39-13-524 the defendant is sentenced to community supervision for life following sentence expiration" [Doc. 2 p. 5, Doc. 2 p. 38]. The judgment was entered the same day Petitioner

entered her guilty plea [Doc. 18 p. 20, *citing* State Court Record, Attachment 1, Bates #000066]. That same day, Petitioner submitted a petition to enter a best-interest plea to the lesser charge of rape in which contains the following statement initialed by Petitioner: "My attorney has reached an agreement with the State, which is contained in the 'Judgment' form(s) and attached to this petition. I have read the form(s) and declare that it contains the entire agreement, which I have reached with the state . . ." [Doc. 18 p. 20, *citing* State Court Record, Attachment 1, Bates #000064]. Respondent asserts that during the post-conviction hearing, Petitioner acknowledge reviewing her petition to enter a best-interest plea, initialing the pages, and signing the form [Doc. 18 p. 20, *citing* State Court Record, Attachment 11, Bates #000233-235]. Therefore, Respondent claims that Petitioner was aware, or should have been aware, of the registry and lifetime supervision requirements at the time of her plea [Doc. 18 p. 20][2].

The Court agrees with Respondent's argument and analysis that the *Martinez* exception is inapplicable to this claim. Based on the State Court Record, analyzed in pertinent part by Respondent, Petitioner cannot find relief under *Martinez* because her underlying ineffective assistance of counsel claim is without merit and thus she was not prejudiced by her post-conviction counsel's failure to raise this claim in state court.

In sum, the Court finds that Petitioner's claim is procedurally defaulted because it was never presented during her state court proceedings. Further, Petitioner is unable to assert ineffective assistance of post-conviction counsel as a cause to excuse procedural default of this

---

[2] Respondent further argues that the *Martinez* exception would not apply in this case because "Petitioner cannot show that she would have rejected this plea agreement in light of the overwhelming evidence against her and the severity of the punishment she actually faced had she gone to trial" [Doc. 18 p. 21]. However, the Court finds it unnecessary to address this additional argument as Petitioner's admitted knowledge of the plea requirements at the time she entered a best-interest plea is sufficient to dismissed any potential *Martinez* claim.

claim, because the State Court Record supports a finding that Petitioner was aware of the lifetime supervision mandate at the time of her plea, rendering meritless her ineffective assistance of trial counsel claim.  As such, Petitioner is not entitled to relief on this claim.

### 2. Claim 3: Trial Counsel was Ineffective for Failing to Investigate the Facts of the Case

Next, Petitioner contends that trial counsel was ineffective for failing to "adequately investigate" her case [Doc. 2 p. 9].  Petitioner avers that trial counsel should have "procure[d] DNA testing on the 'toothbrush holder' alleged to have been used in the commission of the crime" and should have interviewed all the witnesses [*Id.*].  Specifically, trial counsel should have interviewed Officer Becky Stringer because she "would have testified that she saw [Victim] asleep in her bunk as she made rounds every thirty (30) minutes that night" [*Id.* at 10].  In addition, Petitioner claims that "[i]f [trial counsel] had taken the time to read the documents submitted in the discovery, he would have seen that the Medical Reports did not back up [Victim's] allegations" [*Id.*].

Respondent argues that the state court's rejection of this claim "was neither contrary to nor an unreasonable application of clearly established federal law and was not based on an unreasonable determination of fact" [Doc. 18 p. 23].

The TCCA analyzed the claim as follows:

> The post-conviction court also credited the testimony of trial counsel that he either interviewed or ascertained the nature of the statements of the witnesses who would provide the most damaging testimony to the petitioner's case. The court found that trial counsel "did a lot of work on this case."  Further, the petitioner failed to present any witnesses at the post-conviction hearing, including the prison guard who the petitioner claimed informed her that she would have been her "best witness."  As a general rule, the only way a petitioner may establish that the failure to discover or interview a witness resulted in prejudice is to present this witness at the post-conviction hearing. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1995). Trial courts and appellate judges cannot speculate or guess "what a witness' testimony might have been if introduced by defense counsel." *Id.*

The petitioner lastly argues that trial counsel was ineffective for failing to procure DNA testing on a toothbrush holder allegedly used in the offense. In this case, the petitioner did not seek DNA testing at the post-conviction hearing, and the only proof she offered that DNA evidence would prove her innocence is her statement at the post-conviction hearing that "the medical reports clearly state that the girl wasn't raped." In order to show prejudice, the petitioner must prove that but for trial counsel's failure to procure DNA testing on the toothbrush holder "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As this court has stated, the issue in regards to the lack of a DNA test "is whether the proof at the post-conviction hearing established that if trial counsel had in fact obtained DNA testing, the test would have established the Petitioner's innocence as he alleges." *Tommy Nunley v. State,* No. W2003–0294–CCA–R3–PC, 2006 WL 44380, at *6 (Tenn. Crim. App. Jan.6, 2006) *perm. app. denied* (Tenn. June 26, 2006). "Normally, a petitioner would be unable to show prejudice from trial counsel's failure to obtain DNA testing, unless the petitioner could show at the post-conviction hearing what the results of the DNA testing would have been." *Id* . at *7 (Woodall, J., concurring). We conclude that the petitioner has not met her burden of demonstrating prejudice. She has offered no proof to indicate that the toothbrush holder would not contain the victim's DNA, nor did she make any showing as to what the results of the DNA testing would have been or how it would have affected her decision to accept the plea.

We conclude that the record does not preponderate against the finding that trial counsel performed effectively and that his performance did not prejudice the petitioner. Accordingly, we conclude that these issues are without merit, and the petitioner is not entitled to any relief on these claims.

*Whitaker*, 2014 WL 2553441, at *9–10.

A review of the state court proceedings supports the TCCA's conclusion as to this claim. During his representation of Petitioner, trial counsel spoke several times with the detective investigating the case and with several of the individuals who were present in the cell at the time of the offense. *Whitaker*, 2014 WL 2553441, at *5. He determined that testimony by these individuals, along with two of the co-defendants, "would have been pretty severe," as it would have implicated Petitioner and one other defendant as the main perpetrators of the rape. *Id*. At the post-conviction hearing, trial counsel testified that he communicated frequently with Petitioner. *Id*. She called him from a cell phone that she gained access to while incarcerated and they talked

at length about her case. *Id.* Trial counsel and Petitioner discussed a variety of individuals to whom trial counsel could speak, and trial counsel talked to "some of them." *Id.* He believed that he "talked to maybe the Stringer lady." *Id.* He testified that he "followed through" on "a lot" of the information Petitioner relayed to him. *Id.* Trial counsel also testified that while the medical reports did not indicate that the victim received "any cuts, bruises, scarring or whatever," a person does not have to cause any damage to penetrate someone. *Id.* The totality of the evidence against Petitioner, along with the people willing to testify against her "[was] pretty damning." *Id.*

The Court finds that the TCCA applied the relevant case law found in *Strickland* to conclude that trial counsel was not deficient in his representation of Petitioner. This Court agrees with Respondent that the TCCA's findings were not based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. Further, Petitioner failed to present any evidence to overcome the presumption of correctness given to the state court's factual and credibility determinations. Thus, Petitioner has not met her burden of demonstrating that she is entitled to relief on this claim. Consequently, Petitioner is not entitled to relief on this claim.

### 3. Claim 4: Post-Conviction Counsel was Ineffective for Failing to Argue that Trial Counsel was Ineffective

Petitioner next asserts that her counsel on post-conviction was ineffective "for not bringing up the fact [Petitioner] was not informed by either her trial counsel or the trial court regarding the requirement of lifetime supervision, when pleading guilty to a rape charge [Doc. 2 p. 12]. However, after review of the record, the Court finds that prior to the instant petition, Petitioner did not raise this claim for relief.

Ineffective assistance of counsel at this stage of the case cannot constitute cause to excuse the procedural default because it is not an initial-review collateral proceeding. Although *Martinez* and *Trevino* expanded the class of cases in which a petitioner can establish cause to excuse the

procedural default of ineffective-assistance claims, the Supreme Court cautioned that the rule "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez,* 566 U.S. 1; *Trevino v. Thaler*, 569 U.S. 413 (2013).[3]

In this case, Petitioner never raised a claim for ineffective assistance of post-conviction appellate counsel in the state courts. Moreover, the Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim. Ineffective assistance of post-conviction counsel is relevant only if it is cause for failure to comply with a procedural rule. Petitioner has not shown that the error of her post-conviction trial counsel caused her non-compliance with a procedural rule in the post-conviction appellate court. Accordingly, her ineffective assistance of counsel claim is not cognizable in a federal habeas corpus petition. Petitioner is not entitled to relief on this claim.

### C. CLAIM 5

Petitioner contends the trial court "erred by not ensuring Petitioner was fully informed of all imposed consequences prior to accepting her plea" [Doc. 2 p. 13]. Specifically, Petitioner "avers that the trial court had an affirmative duty, before accepting her guilty plea to a crime carrying a mandatory sentence of community supervision for life, to inform her of the consequences of the lifetime supervision" [*Id.*]. Respondent argues that Petitioner did not raise this claim on appeal and therefore it is procedurally barred.

After a review of the record, this Court finds that the alleged due process violation was never presented to the state courts and a state court remedy is no longer available. Although the

---

[3] Ineffective assistance of post-conviction counsel as cause for an excuse under *Martinez* for ineffective assistance of trial counsel is discussed in this Court's analysis of Claim 2.

claim is technically exhausted, it is procedurally defaulted and Petitioner is not entitled to relief on this claim.

### D. CLAIM 6

Lastly, Petitioner claims that "trial court erred by sentencing [her] excessively and contrary to the law" [Doc. 2 p. 14]. Petitioner argues that based on the principles of the Tennessee Criminal Sentencing Reform Act of 1989, the state court record, and "scarce prison resources," the trial court should have imposed the minimum sentence of eight years and not the maximum sentence of twelve years [*Id*.]. Petitioner acknowledges that the trial court correctly classified her as a Range I Standard Offender and that it "sentenced her to the maximum sentence of twelve years, in said Range." [*Id*.]. However, Petitioner asserts that "[t]he [trial] court erroneously found three enhancing factors and two others but gave little weight to them" [*Id*.]. Petitioner claims that she would not have entered the plea agreement she did if she had known that she was going to receive the maximum sentence [*Id*. at 15].

Respondent argues that Petitioner is not entitled to habeas relief on this claim because "[a]bsent evidence that a petitioner's sentence exceeded the statutory maximum for h[er] crime, the length of sentence is typically not cognizable in habeas corpus proceedings" [Doc. 18 p. 27, *citing Hutto v. Davis*, 454 U.S. 370, 373-74 (1982); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000).

In the instant case, Petitioner is clearly challenging the state court's application of state sentencing laws. However, this Court agrees with Respondent's argument and finds that federal habeas courts may not provide relief to petitioner based on errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal habeas petition that alleges state grounds must be dismissed. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). Petitioner's allegation of the

state court's incorrect application of state sentencing guidelines is a matter of state concern only and not a cognizable basis for federal review. *Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only."). Consequently, Petitioner is not entitled to relief on this claim.

## V.     CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## I.     CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims

are procedurally defaulted. Further, in view of the law upon which the dismissal on the merits of the adjudicated sub-claim is based, reasonable jurists could not disagree with the correctness of the Court's resolution of this claim. Because the Court's assessment of Petitioner's claims could not be debated by reasonable jurists, such claims are inadequate to deserve further consideration, and the Court will **DENY** issuance of a COA. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

       **A SEPARATE JUDGMENT ORDER WILL ISSUE.**

       **SO ORDERED** this the 29th day of March, 2018.

              */s/ Harry S. Mattice, Jr.*
              HARRY S. MATTICE, JR.
              UNITED STATES DISTRICT JUDGE